IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

CHARLES BROWN      ) CASE NO:  20CV200758
250 Parmely Avenue     )
Elyria, Ohio  44035      ) JUDGE:  Hon. Judge James L. Miraldi
      Plaintiff,  )
           )
VS.          )
           )
JUDGE CHRISTOPHER R. ROTHGERY ) **MOTION NOT TO DISMISS**
5301 South Park Drive     )
Lorain, Ohio  44053      )
      Defendant.  )
           )

**Memorandum in Support of Plaintiffs Opposition to Defendants Motion to Dismiss**

  Now comes the Plaintiff, Charles Brown, and I respectfully submit this affidavit/affirmation in opposition to the Defendant's Motion to Dismiss Plaintiff's lawsuit for relief in the above captioned case docket of Hon. Judge James L. Miraldi.  Due to the facts the Defendant is in clear violations of the Plaintiff's Civil and Constitutional Rights.  In the forgoing pages of this brief, the Plaintiff will show that the relief requested in the motion is improper and the court does have subject-matter jurisdiction to hear this case.

Introduction

  In this introduction I want to bring forth the following first and foremost the lawsuit complete the Plaintiff has brought against the Defendant is not just a civil matter, it involves felony crime.  Therefor anyone that reads this brief is subject to prosecution by witness.  This brief contains felony accusations that the Defendant has committed, such as civil and constitutional rights, criminal intent and etc., as stated in lawsuit and or complaint, and by reading this brief you bear witness to that effect.  In most states, failure to report a crime isn't a crime in itself, however in the State of Ohio it is.  While merely failing to report a crime is one thing, helping to conceal a crime is another.  A person can generally be charged with accessory after the fact or aiding and abetting if he or she wasn't actually present during the conceal the crime or help the perpetrators

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

or perpetrator as in this case the Defendant, in avoiding capture and or prosecution. The State of Ohio has mandatory reporting laws. Therefor anyone who reads this brief and not reports this crime or see to it that this crime was or has been reported is subject to prosecution due to the State of Ohio mandatory reporting laws.

In this brief the Plaintiff will outline the relevant factual allegations supporting the legal claims brought by the Plaintiff of the lawsuit. Which the Defendant's counsel failed to admit or deny all allegations each and every allegation in the complaint to bring out in their request for dismissal. The Defendant's counsel only points out things that they feel that wasn't incriminating to the Defendant. The Defendant's counsel which to use technical mistakes to make their case Rule 8(f) FRCP and State Court rule which holds that all pleadings shall be construed to do substantial justice. Mere technicalities or mistakes cannot warrant a dismissal alone. The Defendant cannot deny the facts of the lawsuit due to the fact the whole court case was filmed and witnessed by all the people therein, and wrote down by a court reporter. In this brief the Plaintiff will prove that it is probable that the Defendant is legally responsible, or libel, due to the fact a civil case is decided on a balance of probabilities. That is the standard of proof for a civil case just as the standard of proof for a criminal case is proof beyond a reasonable doubt. The Plaintiff has and will show that improper activity took place on the part of the Defendant. In this brief the Plaintiff will show that the venue is proper with the proper jurisdiction to bring lawsuit. Lawsuit is proper and in accordance with the color of the law and by the law. The Plaintiff has meat all obligations to receive compensation. Any and all immunity rights the Defendant may have enjoyed in void due to the Defendants illegal action as the Plaintiff has and will show in a court of law. The Plaintiff will show the defendant was biased, racist and prejudiced to the Plaintiff therefore the Defendant could not have been fair and impartial in deciding Plaintiff's case. In this lawsuit the Plaintiff is not arguing the facts Judge Rothgery having proper jurisdiction or not. The

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

main focus in this lawsuit is on all the illegal activity that took place in the case by the Defendant.

All part to the making of a kangaroo court.

### Jurisdiction and Venue

The court has jurisdiction and venue due to mandamus.

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

# mandamus

'we command', formerly a writ, now an order of court that commands a person, corporation or tribunal to carry out its duty. It is used to regulate the proceedings of tribunals and the like. In Scotland, the Court of Session has a general supervisory jurisdiction that allows it to achieve the same effect and, indeed, probably

# Mandamus

*[Latin, We comand.] A writ or order that is issued from a court of superior jurisdiction that commands an inferior tribunal, corporation, Municipal Corporation, or individual to perform, or refrain from performing, a particular act, the performance or omission of which is required by law as an obligation.*

A writ or order of mandamus is an extraordinary court order because it is made without the benefit of full judicial process, or before a case is concluded. It may be issued by a court at any time that it is appropriate, but it is usually issued in a case that has already begun.

Generally, the decisions of a lower-court made in the course of a continuing case will not be reviewed by higher courts until there is a final judgment in the case. On the federal level, for example, 28 U.S.C.A. § 1291 provides that appellate review of lower-court decisions should be postponed until after a final judgment has been made in the lower court. A writ of mandamus offers one exception to this rule. If a party to a case is dissatisfied with some decision of the trial court, the party may appeal the decision to a higher court with a petition for a writ of mandamus before the trial proceeds. The order will be issued only in exceptional circumstances.

The writ of mandamus was first used by English courts in the early seventeenth century. It migrated to the courts in the American colonies, and the law on it has remained largely the same ever since. The remedy of mandamus is made available through court opinions, statutes, and court rules on both the federal and state levels. On the federal level, for example, 28 U.S.C.A. § 1651(a) provides that courts "may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law."

The Supreme Court set forth some guidelines on writs of mandamus in *Kerr v. United States District Court*, 426 U.S. 394, 96 S. Ct. 2119, 48 L. Ed. 2d 725 (1976). In *Kerr*, the Court upheld the denial of a writ of mandamus sought by prison officials to prevent the district court from compelling them to turn over personnel and inmate files to seven prisoners who had sued the prison over alleged constitutional violations. The officials argued that turning over the records would compromise prison communications and confidentiality.

The Supreme Court observed in *Kerr* that the writ of mandamus was traditionally used by federal courts only to confine an inferior court to a lawful exercise of its jurisdiction, or to compel an inferior court to exercise its authority when it had a duty to do so. The Court also noted that mandamus is available only in exceptional cases because it is so disruptive of the judicial process, creating disorder and delay in the trial. The writ would have been appropriate, opined the Court, if the trial court had wrongly decided an issue, if failure to reverse that decision would irreparably injure a party, and if there was no other method for relief. Because the prison officials could claim a privilege to withhold certain documents, and had the right to have the documents reviewed by a judge prior to release to the opposing party, other remedies existed and the writ was inappropriate.

# mandamus

(man-dame-us) n. Latin for "we order," a writ (more modernly called a "writ of mandate") which orders a public agency or governmental body to perform an act required by law when it has neglected or refused to do so. Examples: After petitions were filed with sufficient valid signatures to qualify a proposition for the ballot, the city refuses to call the election, claiming it has a legal opinion that the proposal is unconstitutional. The backers of the proposition file a petition for a writ ordering the city to hold the election. The court will order a hearing on the writ and afterwards either issue the writ or deny the petition. Or a state agency refuses to release public information, a school district charges fees to a student in violation of state law, or a judge will not permit reporters entry at a public trial. All of these can be subject of petitions for a writ of mandamus.

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

MANDAMUS, practice. The name of a writ, the principal word of which when the proceedings were in Latin, was mandamus, we command.

2. It is a command issuing in the name of the sovereign authority from a superior court having jurisdiction, and is directed to some person, corporation, or, inferior court, within the jurisdiction of such superior court, requiring them to do some particular thing therein specified, which appertains to their office and duty, and which the superior court has previously determined, or at least supposes to be consonant to right and justice. 20 Pick. 484; 21 Pick. 258; Dudley, 37; 4 Humph. 437.

3. Mandamus is not a writ of right, it is not consequently granted of course, but only at the discretion of the court to whom the application for it is made; and this discretion is not exercised in favor of the applicant, unless some just and useful purpose may be answered by the writ. 2 T. R. 385; 1 Cowen's R. 501; 11 Shepl. 151; 1 Pike, 11.

4. This writ was introduced to prevent disorders from a failure of justice; therefore it ought to be used upon all occasions where the law has established no specific remedy, and where in justice and good government there ought to be one. 3 Burr. R. 1267; 1 T. R. 148, 9.; 2 Pick. 414; 4 Pick. 68; 10 Pick. 235, 244; 7 Mass; 340; 3 Binn. 273; 5 Halst. 57; Cooke, 160; 1 Wend. 318; 5 Pet. 190; 1 Caines, R. 511; John. Cas. 181; 12 Wend. 183; 8 Pet. 291; 12 Pet. 524; 2 Penning. 1024; Hardin, 172; 7 Wheat. 534; 5 Watts. 152; 2 H. & M. 132; 3 H. & M. 1; 1 S. & R. 473; 5 Binn. 87; 3 Conn. 243; 2 Virg. Cas. 499; 5 Call. 548. Mandamus will not lie where the law has given another specific remedy. 1 Wend. 318; 10 John. 484; 1 Cow. 417; Coleman, 117; 1 Pet. 567; 2 Cowen, 444; 2 McCord, 170; Minor, 46; 2 Leigh, 165; Const. Rep. 165, 175, 703.

5. The 13th section of the act of congress of September, 24, 1789, gives the supreme court power to issue writs of mandamus in cases warranted by the principles and usages of law, to any courts appointed or persons holding office, under the authority of the United States. The issuing of a mandamus to courts, is the exercise of an appellate jurisdiction, and, therefore constitutionally vested in the supreme court; but a mandamus directed to a public officer, belongs to original jurisdiction, and by the constitution, the exercise of original jurisdiction by the supreme court is restricted to certain specified cases, which do not comprehend a mandamus. The latter clause of the above section, authorizing this writ to be issued by the supreme court, to persons holding office under the authority of the United States, is, therefore, not warranted by the constitution, and void. 1 Cranch, R. 175.

6. The circuit courts of the United States may also issue writs of mandamus, but their power in this particular, is confined exclusively to those cases in which it may be necessary to the exercise of their jurisdiction. 7 Cranch, R. 504; 8 Wheat. R. 598; 1 Paine's R. 453. Vide, generally, 3 Bl. Com. 110; Com. Dig. h. t; Bac. Ab. h.t.; Vin. Ab. h.t.; Selw. N. P. h.t.; Chit. Pr. h.t.; Serg. Const. Index, h.t.; Ang. on Corp. Index, h.t.; 3 Chit. Bl. Com. 265 n. 7; 1 Kent. Com. 322; Dane's Ab. Index, h.t.; 6 Watts & Serg. 386, 397; Bouv. Inst. Index, h.t.; and the article "Courts of the United States."

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

**Improper Courtroom Behavior**

When on or about March 7, 2018 Aliceison Brown, the Plaintiff's daughter, was asked by the prosecutor a question, the Defendant, Judge Christopher Rothgery, would yell, holler and or scream in an animated way shut up as if to bring laughter from the jury.  The Defendant did this at least three times or more until the Plaintiff's daughter started crying.  The jury never got a clear testimony from the Plaintiff's daughter as to what happened in the case which is a clear violation of her civil rights, and is improper behavior for a judge to make fun of a witness in a court of law while a trial is going on as he or she is presiding over the trial or preceding.  This was not just improper courtroom behavior, this was criminal attempt to obstruct justice to block witness testimony with criminal intent.  Knowing if the jury didn't hear Aliceison Brown's testimony they could not act or evaluate it in coming to a conclusion in evaluating if the Plaintiff was guilty or not.  Aliceison Brown had just as well not got on the witness stand.  Due to the Defendant's interference it amounted to the same thing.  As this kangaroo court continues.

On or about March 7, 2018 the Plaintiff, Charles Brown, took the stand where he was yelled, hollered and screamed at before he could open his mouth and was done the same way his daughter Aliceison Brown was done.  The Defendant Judge Christopher Rothgery continued to interfere with the prosecutor questioning until nor the prosecutor or the jury could get a clear idea of what the Plaintiff was trying to convey to the court therefore the jury could not get a good or clear testimony to come up with a reasonable conclusion to determine or making a good judgment as to whether or not of the Plaintiff's guilt.  This was blatantly done openly and unashamedly with no remorse with malice as if he was on some kind of drug or alcohol induced state of mind.  Even the prosecutor looked bewildered at these outbursts given by the Defendant Judge Christopher Rothgery.  He intimidated the Plaintiff Charles Brown.  He humiliated the Plaintiff publicly.  The Defendant Judge Christopher Rothgery was relentless in his verbal assault with underlying anger and hostility.  The defamation that the Defendant was so overwhelming it brought fear to the

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

Plaintiff's life the way the Defendant was leaning over the podium as if he was going to hit the Plaintiff with his fists as the Defendant continued his verbal abuse. The Plaintiff Charles Brown would apologize every time the Defendant lunged at him and yelled shut up for what the Plaintiff didn't know he just thought it best to do so. At that point the Plaintiff knew he was being railroaded in a kangaroo court. The Plaintiff Charles Brown at that point knew he had no chance of testifying on his own behalf so the Plaintiff thought it best just to ask if he could be excused from the witness stand before he was somehow found in contempt of court. At that point the Plaintiff knew this was a fraudulent procedure and knew he had no chance of winning his case he knew his fate was sealed and he would be found guilty of a crime he didn't commit due to the treasonous act brought forth by the Defendant Judge Christopher Rothgery. All of which was witnessed by the court reporter, the jury, the entire prosecution, the public audience and all of this was filmed by the use of audio and video recording devices of the court as required by law. Therefore, I challenge the court to view the film for themselves and see the truth for themselves. This will leave no doubt as to whether or not in their view if this was proper behavior becoming a judge or not, and if it was a kangaroo court by virtue. As the Defendant hides behind his immunity rights to carry his sick criminal intent, illegal acts and ethic violations. This combined with the Defendant's alcoholic addiction makes for improper courtroom behavior. He should seek some type of help for his addiction in my view. So he can't help himself but to be a fraud of a court, the man is sick.

**Improper Courtroom Behavior**

COMMENTARY

Deference to the judgments and rulings of courts depends on public confidence in the integrity and independence of judges. The integrity and independence of judges depend in turn on their acting without fear or favor. Although judges should be independent, they must comply with the law and should comply with this Code. Adherence to this responsibility helps to maintain public confidence

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

in the impartiality of the judiciary. Conversely, violation of this Code diminishes public confidence in the judiciary and injures our system of government under law.

The Canons are rules of reason. They should be applied consistently with constitutional requirements, statutes, other court rules and decisional law, and in the context of all relevant circumstances. The Code is to be construed so it does not impinge on the essential independence of judges in making judicial decisions.

The Code is designed to provide guidance to judges and nominees for judicial office. It may also provide standards of conduct for application in proceedings under the Judicial Councils Reform and Judicial Conduct and Disability Act of 1980 (28 U.S.C. §§ 332(d)(1), 351-364). Not every violation of the Code should lead to disciplinary action. Whether disciplinary action is appropriate, and the degree of discipline, should be determined through a reasonable application of the text and should depend on such factors as the seriousness of the improper activity, the intent of the judge, whether there is a pattern of improper activity, and the effect of the improper activity on others or on the judicial system. Many of the restrictions in the Code are necessarily cast in general terms, and judges may reasonably differ in their interpretation. Furthermore, the Code is not designed or intended as a basis for civil liability or criminal prosecution. Finally, the Code is not intended to be used for tactical advantage.

## Canon 2: A Judge Should Avoid Impropriety and the Appearance of Impropriety in all Activities

(A) *Respect for Law.* A judge should respect and comply with the law and should act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary.

(B) *Outside Influence.* A judge should not allow family, social, political, financial, or other relationships to influence judicial conduct or judgment. A judge should neither lend the prestige of the judicial office to advance the private interests of the judge or others nor convey or permit

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

others to convey the impression that they are in a special position to influence the judge. A judge should not testify voluntarily as a character witness.

(C) *Nondiscriminatory Membership*. A judge should not hold membership in any organization that practices invidious discrimination on the basis of race, sex, religion, or national origin.

COMMENTARY

**Canon 2A**. An appearance of impropriety occurs when reasonable minds, with knowledge of all the relevant circumstances disclosed by a reasonable inquiry, would conclude that the judge's honesty, integrity, impartiality, temperament, or fitness to serve as a judge is impaired. Public confidence in the judiciary is eroded by irresponsible or improper conduct by judges, including harassment and other inappropriate workplace behavior. A judge must avoid all impropriety and appearance of impropriety. This prohibition applies to both professional and personal conduct. A judge must expect to be the subject of constant public scrutiny and accept freely and willingly restrictions that might be viewed as burdensome by the ordinary citizen. Because it is not practicable to list all prohibited acts, the prohibition is necessarily cast in general terms that extend to conduct by judges that is harmful although not specifically mentioned in the Code. Actual improprieties under this standard include violations of law, court rules, or other specific provisions of this Code.

**Canon 2B**. Testimony as a character witness injects the prestige of the judicial office into the proceeding in which the judge testifies and may be perceived as an official testimonial. A judge should discourage a party from requiring the judge to testify as a character witness except in unusual circumstances when the demands of justice require. This Canon does not create a privilege against testifying in response to an official summons.

A judge should avoid lending the prestige of judicial office to advance the private interests of the judge or others. For example, a judge should not use the judge's judicial position or title to gain advantage in litigation involving a friend or a member of the judge's family. In contracts for

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

publication of a judge's writings, a judge should retain control over the advertising to avoid exploitation of the judge's office.

A judge should be sensitive to possible abuse of the prestige of office. A judge should not initiate communications to a sentencing judge or a probation or corrections officer but may provide information to such persons in response to a formal request. Judges may participate in the process of judicial selection by cooperating with appointing authorities and screening committees seeking names for consideration and by responding to official inquiries concerning a person being considered for a judgeship.

**Canon 2C**. Membership of a judge in an organization that practices invidious discrimination gives rise to perceptions that the judge's impartiality is impaired. Canon 2C refers to the current practices of the organization. Whether an organization practices invidious discrimination is often a complex question to which judges should be sensitive. The answer cannot be determined from a mere examination of an organization's current membership rolls but rather depends on how the organization selects members and other relevant factors, such as that the organization is dedicated to the preservation of religious, ethnic or cultural values of legitimate common interest to its members, or that it is in fact and effect an intimate, purely private organization whose membership limitations could not be constitutionally prohibited. See New York State Club Ass'n. Inc. v. City of New York, 487 U.S. 1, 108 S. Ct. 2225, 101 L. Ed. 2d 1 (1988); Board of Directors of Rotary International v. Rotary Club of Duarte, 481 U.S. 537, 107 S. Ct. 1940, 95 L. Ed. 2d 474 (1987); Roberts v. United States Jaycees, 468 U.S. 609, 104 S. Ct. 3244, 82 L. Ed. 2d 462 (1984). Other relevant factors include the size and nature of the organization and the diversity of persons in the locale who might reasonably be considered potential members. Thus the mere absence of diverse membership does not by itself demonstrate a violation unless reasonable persons with knowledge of all the relevant circumstances would expect that the membership would be diverse in the absence of invidious discrimination. Absent such factors, an organization is generally said to

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

discriminate invidiously if it arbitrarily excludes from membership on the basis of race, religion, sex, or national origin persons who would otherwise be admitted to membership.

Although Canon 2C relates only to membership in organizations that invidiously discriminate on the basis of race, sex, religion or national origin, a judge's membership in an organization that engages in any invidiously discriminatory membership practices prohibited by applicable law violates Canons 2 and 2A and gives the appearance of impropriety. In addition, it would be a violation of Canons 2 and 2A for a judge to arrange a meeting at a club that the judge knows practices invidious discrimination on the basis of race, sex, religion, or national origin in its membership or other policies, or for the judge to use such a club regularly. Moreover, public manifestation by a judge of the judge's knowing approval of invidious discrimination on any basis gives the appearance of impropriety under Canon 2 and diminishes public confidence in the integrity and impartiality of the judiciary, in violation of Canon 2A.

When a judge determines that an organization to which the judge belongs engages in invidious discrimination that would preclude membership under Canon 2C or under Canons 2 and 2A, the judge is permitted, in lieu of resigning, to make immediate and continuous efforts to have the organization discontinue its invidiously discriminatory practices. If the organization fails to discontinue its invidiously discriminatory practices as promptly as possible (and in all events within two years of the judge's first learning of the practices), the judge should resign immediately from the organization.

**Canon 3: A Judge Should Perform the Duties of the Office Fairly, Impartially and Diligently**

The duties of judicial office take precedence over all other activities. The judge should perform those duties with respect for others, and should not engage in behavior that is harassing, abusive, prejudiced, or biased. The judge should adhere to the following standards:

(A) *Adjudicative Responsibilities.*

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

(1) A judge should be faithful to, and maintain professional competence in, the law and should not be swayed by partisan interests, public clamor, or fear of criticism.

(2) A judge should hear and decide matters assigned, unless disqualified, and should maintain order and decorum in all judicial proceedings.

(3) A judge should be patient, dignified, respectful, and courteous to litigants, jurors, witnesses, lawyers, and others with whom the judge deals in an official capacity. A judge should require similar conduct by those subject to the judge's control, including lawyers to the extent consistent with their role in the adversary process.

(4) A judge should accord to every person who has a legal interest in a proceeding, and that person's lawyer, the full right to be heard according to law. Except as set out below, a judge should not initiate, permit, or consider ex parte communications or consider other communications concerning a pending or impending matter that are made outside the presence of the parties or their lawyers. If a judge receives an unauthorized ex parte communication bearing on the substance of a matter, the judge should promptly notify the parties of the subject matter of the communication and allow the parties an opportunity to respond, if requested. A judge may:

(a) initiate, permit, or consider ex parte communications as authorized by law;

(b) when circumstances require it, permit ex parte communication for scheduling, administrative, or emergency purposes, but only if the ex parte communication does not address substantive matters and the judge reasonably believes that no party will gain a procedural, substantive, or tactical advantage as a result of the ex parte communication;

(c) obtain the written advice of a disinterested expert on the law, but only after giving advance notice to the parties of the person to be consulted and the subject matter of the advice and affording the parties reasonable opportunity to object and respond to the notice and to the advice received; or

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

(d) with the consent of the parties, confer separately with the parties and their counsel in an effort to mediate or settle pending matters.

(5) A judge should dispose promptly of the business of the court.

(6) A judge should not make public comment on the merits of a matter pending or impending in any court. A judge should require similar restraint by court personnel subject to the judge's direction and control. The prohibition on public comment on the merits does not extend to public statements made in the course of the judge's official duties, to explanations of court procedures, or to scholarly presentations made for purposes of legal education.

(B) *Administrative Responsibilities.*

(1) A judge should diligently discharge administrative responsibilities, maintain professional competence in judicial administration, and facilitate the performance of the administrative responsibilities of other judges and court personnel.

(2) A judge should not direct court personnel to engage in conduct on the judge's behalf or as the judge's representative when that conduct would contravene the Code if undertaken by the judge.

(3) A judge should exercise the power of appointment fairly and only on the basis of merit, avoiding unnecessary appointments, nepotism, and favoritism. A judge should not approve compensation of appointees beyond the fair value of services rendered.

(4) A judge should practice civility, by being patient, dignified, respectful, and courteous, in dealings with court personnel, including chambers staff. A judge should not engage in any form of harassment of court personnel. A judge should not retaliate against those who report misconduct. A judge should hold court personnel under the judge's direction to similar standards.

(5) A judge with supervisory authority over other judges should take reasonable measures to ensure that they perform their duties timely and effectively.

(6) A judge should take appropriate action upon receipt of reliable information indicating the likelihood that a judge's conduct contravened this Code, that a judicial employee's conduct

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

contravened the Code of Conduct for Judicial Employees, or that a lawyer violated applicable rules of professional conduct.

(C) *Disqualification.*

(1) A judge shall disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned, including but not limited to instances in which:

(a) the judge has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding;

(b) the judge served as a lawyer in the matter in controversy, or a lawyer with whom the judge previously practiced law served during such association as a lawyer concerning the matter, or the judge or lawyer has been a material witness;

(c) the judge knows that the judge, individually or as a fiduciary, or the judge's spouse or minor child residing in the judge's household, has a financial interest in the subject matter in controversy or in a party to the proceeding, or any other interest that could be affected substantially by the outcome of the proceeding;

(d) the judge or the judge's spouse, or a person related to either within the third degree of relationship, or the spouse of such a person is:

(i) a party to the proceeding, or an officer, director, or trustee of a party;

(ii) acting as a lawyer in the proceeding;

(iii) known by the judge to have an interest that could be substantially affected by the outcome of the proceeding; or

(iv) to the judge's knowledge likely to be a material witness in the proceeding;

(e) the judge has served in governmental employment and in that capacity participated as a judge (in a previous judicial position), counsel, advisor, or material witness concerning the proceeding or has expressed an opinion concerning the merits of the particular case in controversy.

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

(2) A judge should keep informed about the judge's personal and fiduciary financial interests and make a reasonable effort to keep informed about the personal financial interests of the judge's spouse and minor children residing in the judge's household.

(3) For the purposes of this section:

(a) the degree of relationship is calculated according to the civil law system; the following relatives are within the third degree of relationship: parent, child, grandparent, grandchild, great grandparent, great grandchild, sister, brother, aunt, uncle, niece, and nephew; the listed relatives include whole and half blood relatives and most step relatives;

(b) "fiduciary" includes such relationships as executor, administrator, trustee, and guardian;

(c) "financial interest" means ownership of a legal or equitable interest, however small, or a relationship as director, advisor, or other active participant in the affairs of a party, except that:

(i) ownership in a mutual or common investment fund that holds securities is not a "financial interest" in such securities unless the judge participates in the management of the fund;

(ii) an office in an educational, religious, charitable, fraternal, or civic organization is not a "financial interest" in securities held by the organization;

(iii) the proprietary interest of a policyholder in a mutual insurance company, or a depositor in a mutual savings association, or a similar proprietary interest, is a "financial interest" in the organization only if the outcome of the proceeding could substantially affect the value of the interest;

(iv) ownership of government securities is a "financial interest" in the issuer only if the outcome of the proceeding could substantially affect the value of the securities;

(d) "proceeding" includes pretrial, trial, appellate review, or other stages of litigation.

(4) Notwithstanding the preceding provisions of this Canon, if a judge would be disqualified because of a financial interest in a party (other than an interest that could be substantially affected

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

by the outcome), disqualification is not required if the judge (or the judge's spouse or minor child) divests the interest that provides the grounds for disqualification.

(D) *Remittal of Disqualification.* Instead of withdrawing from the proceeding, a judge disqualified by Canon 3C(1) may, except in the circumstances specifically set out in subsections (a) through (e), disclose on the record the basis of disqualification. The judge may participate in the proceeding if, after that disclosure, the parties and their lawyers have an opportunity to confer outside the presence of the judge, all agree in writing or on the record that the judge should not be disqualified, and the judge is then willing to participate. The agreement should be incorporated in the record of the proceeding.

COMMENTARY

**Canon 3A(3).** The duty to hear all proceedings fairly and with patience is not inconsistent with the duty to dispose promptly of the business of the court. Courts can be efficient and businesslike while being patient and deliberate.

The duty under Canon 2 to act in a manner that promotes public confidence in the integrity and impartiality of the judiciary applies to all the judge's activities, including the discharge of the judge's adjudicative and administrative responsibilities. The duty to be respectful includes the responsibility to avoid comment or behavior that could reasonably be interpreted as harassment, prejudice or bias.

**Canon 3A(4).** The restriction on ex parte communications concerning a proceeding includes communications from lawyers, law teachers, and others who are not participants in the proceeding. A judge may consult with other judges or with court personnel whose function is to aid the judge in carrying out adjudicative responsibilities. A judge should make reasonable efforts to ensure that law clerks and other court personnel comply with this provision.

A judge may encourage and seek to facilitate settlement but should not act in a manner that coerces any party into surrendering the right to have the controversy resolved by the courts.

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

**Canon 3A(5)**. In disposing of matters promptly, efficiently, and fairly, a judge must demonstrate due regard for the rights of the parties to be heard and to have issues resolved without unnecessary cost or delay. A judge should monitor and supervise cases to reduce or eliminate dilatory practices, avoidable delays, and unnecessary costs.

Prompt disposition of the court's business requires a judge to devote adequate time to judicial duties, to be punctual in attending court and expeditious in determining matters under submission, and to take reasonable measures to ensure that court personnel, litigants, and their lawyers cooperate with the judge to that end.

**Canon 3A(6)**. The admonition against public comment about the merits of a pending or impending matter continues until the appellate process is complete. If the public comment involves a case from the judge's own court, the judge should take particular care so that the comment does not denigrate public confidence in the judiciary's integrity and impartiality, which would violate Canon 2A. A judge may comment publicly on proceedings in which the judge is a litigant in a personal capacity, but not on mandamus proceedings when the judge is a litigant in an official capacity (but the judge may respond in accordance with Fed. R. App. P. 21(b)).

**Canon 3B(3)**. A judge's appointees include assigned counsel, officials such as referees, commissioners, special masters, receivers, guardians, and personnel such as law clerks, secretaries, and judicial assistants. Consent by the parties to an appointment or an award of compensation does not relieve the judge of the obligation prescribed by this subsection.

**Canon 3B(4)**. A judge should neither engage in, nor tolerate, workplace conduct that is reasonably interpreted as harassment, abusive behavior, or retaliation for reporting such conduct. The duty to refrain from retaliation includes retaliation against former as well as current judiciary personnel.

Under this Canon, harassment encompasses a range of conduct having no legitimate role in the workplace, including harassment that constitutes discrimination on impermissible grounds and other abusive, oppressive, or inappropriate conduct directed at judicial employees or others. See

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

Rules for Judicial-Conduct and Judicial-Disability Proceedings, Rule 4(a)(2) (providing that "cognizable misconduct includes: (A) engaging in unwanted, offensive, or abusive sexual conduct, including sexual harassment or assault; (B) treating litigants, attorneys, judicial employees, or others in a demonstrably egregious and hostile manner; or (C) creating a hostile work environment for judicial employees") and Rule 4(a)(3) (providing that "cognizable misconduct includes intentional discrimination on the basis of race, color, sex, gender, gender identity, pregnancy, sexual orientation, religion, national origin, age, or disability").

**Canon 3B(6)**. Public confidence in the integrity and impartiality of the judiciary is promoted when judges take appropriate action based on reliable information of likely misconduct. Appropriate action depends on the circumstances, but the overarching goal of such action should be to prevent harm to those affected by the misconduct and to prevent recurrence. A judge, in deciding what action is appropriate, may take into account any request for confidentiality made by a person complaining of or reporting misconduct. See Rules for Judicial-Conduct and Judicial-Disability Proceedings, Rule 4(a)(6) (providing that "cognizable misconduct includes failing to call to the attention of the relevant chief district judge or chief circuit judge any reliable information reasonably likely to constitute judicial misconduct or disability. A judge who receives such reliable information shall respect a request for confidentiality but shall nonetheless disclose the information to the chief district judge or chief circuit judge, who shall also treat the information as confidential. Certain reliable information may be protected from disclosure by statute or rule. A judge's assurance of confidentiality must yield when there is reliable information of misconduct or disability that threatens the safety or security of any person or that is serious or egregious such that it threatens the integrity and proper functioning of the judiciary. A person reporting information of misconduct or disability must be informed at the outset of a judge's responsibility to disclose such information to the relevant chief district judge or chief circuit judge. Reliable information reasonably likely to constitute judicial misconduct or disability related to a chief

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

circuit judge should be called to the attention of the next most-senior active circuit judge. Such information related to a chief district judge should be called to the attention of the chief circuit judge.").

Appropriate action may include direct communication with the judge or lawyer, other direct action if available, reporting the conduct to the appropriate authorities, or, when the judge believes that a judge's or lawyer's conduct is caused by drugs, alcohol, or a medical condition, making a confidential referral to an assistance program. Appropriate action may also include responding to a subpoena to testify or otherwise cooperating with or participating in judicial or lawyer disciplinary proceedings; a judge should be candid and honest with disciplinary authorities.

**Canon 3C**. Recusal considerations applicable to a judge's spouse should also be considered with respect to a person other than a spouse with whom the judge maintains both a household and an intimate relationship.

**Canon 3C(1)(c)**. In a criminal proceeding, a victim entitled to restitution is not, within the meaning of this Canon, a party to the proceeding or the subject matter in controversy. A judge who has a financial interest in the victim of a crime is not required by Canon 3C(1)(c) to disqualify from the criminal proceeding, but the judge must do so if the judge's impartiality might reasonably be questioned under Canon 3C(1) or if the judge has an interest that could be substantially affected by the outcome of the proceeding under Canon 3C(1)(d)(iii).

**Canon 3C(1)(d)(ii)**. The fact that a lawyer in a proceeding is affiliated with a law firm with which a relative of the judge is affiliated does not of itself disqualify the judge. However, if "the judge's impartiality might reasonably be questioned" under Canon 3C(1), or the relative is known by the judge to have an interest in the law firm that could be "substantially affected by the outcome of the proceeding" under Canon 3C(1)(d)(iii), the judge's disqualification is required.

**Canon 4: A Judge May Engage in Extrajudicial Activities that are Consistent with the Obligations of Judicial Office**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

A judge may engage in extrajudicial activities, including law-related pursuits and civic, charitable, educational, religious, social, financial, fiduciary, and governmental activities, and may speak, write, lecture, and teach on both law-related and nonlegal subjects. However, a judge should not participate in extrajudicial activities that detract from the dignity of the judge's office, interfere with the performance of the judge's official duties, reflect adversely on the judge's impartiality, lead to frequent disqualification, or violate the limitations set forth below.

(A) *Law-related Activities.*

(1) *Speaking, Writing, and Teaching.* A judge may speak, write, lecture, teach, and participate in other activities concerning the law, the legal system, and the administration of justice

(2) *Consultation.* A judge may consult with or appear at a public hearing before an executive or legislative body or official:

(a) on matters concerning the law, the legal system, or the administration of justice;

### 28 U.S. Code § 455. Disqualification of justice, judge, or magistrate judge

(a) Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.

(b) He shall also disqualify himself in the following circumstances:

(1) Where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding;

(2) Where in private practice he served as lawyer in the matter in controversy, or a lawyer with whom he previously practiced law served during such association as a lawyer concerning the matter, or the judge or such lawyer has been a material witness concerning it;

(3) Where he has served in governmental employment and in such capacity participated as counsel, adviser or material witness concerning the proceeding or expressed an opinion concerning the merits of the particular case in controversy;

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

(4) He knows that he, individually or as a <u>fiduciary</u>, or his spouse or minor child residing in his household, has a financial interest in the subject matter in controversy or in a party to the <u>proceeding</u>, or any other interest that could be substantially affected by the outcome of the <u>proceeding</u>;

(5) He or his spouse, or a person within the third degree of relationship to either of them, or the spouse of such a person:

(i) Is a party to the <u>proceeding</u>, or an officer, director, or trustee of a party;

(ii) Is acting as a lawyer in the <u>proceeding</u>;

(iii) Is known by the judge to have an interest that could be substantially affected by the outcome of the <u>proceeding</u>;

(iv) Is to the judge's knowledge likely to be a material witness in the <u>proceeding</u>.

(c) A judge should inform himself about his personal and <u>fiduciary</u> financial interests, and make a reasonable effort to inform himself about the personal financial interests of his spouse and minor children residing in his household.

(d) For the purposes of this section the following words or phrases shall have the meaning indicated:

(1) "<u>proceeding</u>" includes pretrial, trial, appellate review, or other stages of litigation;

(2) the degree of relationship is calculated according to the civil law system;

(3) "<u>fiduciary</u>" includes such relationships as executor, administrator, trustee, and guardian;

(4) "financial interest" means ownership of a legal or equitable interest, however small, or a relationship as director, adviser, or other active participant in the affairs of a party, except that:

(i) Ownership in a mutual or common investment fund that holds securities is not a "financial interest" in such securities unless the judge participates in the management of the fund;

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

(ii) An office in an educational, religious, charitable, fraternal, or civic organization is not a "financial interest" in securities held by the organization;

(iii) The proprietary interest of a policyholder in a mutual insurance company, of a depositor in a mutual savings association, or a similar proprietary interest, is a "financial interest" in the organization only if the outcome of the proceeding could substantially affect the value of the interest;

(iv) Ownership of government securities is a "financial interest" in the issuer only if the outcome of the proceeding could substantially affect the value of the securities.

(e) No justice, judge, or magistrate judge shall accept from the parties to the proceeding a waiver of any ground for disqualification enumerated in subsection (b). Where the ground for disqualification arises only under subsection (a), waiver may be accepted provided it is preceded by a full disclosure on the record of the basis for disqualification.

(f) Notwithstanding the preceding provisions of this section, if any justice, judge, magistrate judge, or bankruptcy judge to whom a matter has been assigned would be disqualified, after substantial judicial time has been devoted to the matter, because of the appearance or discovery, after the matter was assigned to him or her, that he or she individually or as a fiduciary, or his or her spouse or minor child residing in his or her household, has a financial interest in a party (other than an interest that could be substantially affected by the outcome), disqualification is not required if the justice, judge, magistrate judge, bankruptcy judge, spouse or minor child, as the case may be, divests himself or herself of the interest that provides the grounds for the disqualification.

(June 25, 1948, ch. 646, 62 Stat. 908; Pub. L. 93–512, § 1, Dec. 5, 1974, 88 Stat. 1609; Pub. L. 95–598, title II, § 214(a), (b), Nov. 6, 1978, 92 Stat. 2661; Pub. L. 100–702, title X, § 1007, Nov. 19, 1988, 102 Stat. 4667; Pub. L. 101–650, title III, § 321, Dec. 1, 1990, 104 Stat. 5117.)

**Complaint**

Civil Complaint

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

The Defendant states that I have not stated a claim for relief therefor I present the count at follows.

A civil complaint initiates a civil lawsuit by setting forth for the court a claim for relief from damages caused, or wrongful conduct engaged in, by the defendant. The complaint outlines all of the plaintiff's theories of relief, or causes of action (e.g., **NEGLIGENCE**, **BATTERY**, assault), and the facts supporting each **CAUSE OF ACTION**. The complaint also serves as notice to the defendant that legal action is underway. The Federal Rules of Civil Procedure govern construction of complaints filed in federal courts. Many state courts follow the same rules as the federal courts, or similar rules.

The caption opens the complaint and identifies the location of the action, the court, the docket or file number, and the title of the action. Each party to the lawsuit must be identified in the caption and must be a real party in interest, that is, either a person who has been injured or harmed in some way, or a person accused of causing the injury or harm. In addition, a party must have the capacity to sue or to be sued. If a party lacks capacity owing to mental incompetence, for example, the suit may be dismissed. Any number of parties may be named and joined in a single lawsuit as long as all meet the requirements of capacity and all are real parties in interest.

Courts of limited–subject matter jurisdiction, such as federal courts, require the complaint to demonstrate that the court has jurisdiction to hear the case. In general-jurisdiction courts, such as most state courts, a jurisdictional allegation is unnecessary.

The most critical part of the complaint is the claim, or cause of action. The claim is a concise and direct statement of the basis upon which the plaintiff seeks relief. It sets forth the **RULE OF LAW** that forms the basis of the lawsuit and recounts the facts that support the rule of law. Finally, the claim concludes that the defendant violated the rule of law, thereby causing the plaintiff's injuries or damages, and that the plaintiff is entitled to relief. For example: A negligence claim might begin with a statement that the defendant owed a duty of care to the plaintiff; that the

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

defendant breached that duty; and that, as a result, the plaintiff suffered injuries or other damages. The conclusion then states that because the defendant's breach was the cause of the plaintiff's injuries, the plaintiff is entitled to compensation from the defendant.

The complaint may state separate claims or theories of relief in separate counts. For example, in a negligence case, count 1 might be for negligence, count 2 for breach of **WARRANTY**, and count 3 for **FRAUD**. Each count contains a separate statement of the rule of law, supporting facts, and conclusion. There is no limit to the number of counts a plaintiff may include in one complaint.

Federal courts and other jurisdictions that follow the Federal Rules of Civil Procedure require a brief, simple pleading known as a notice pleading. The notice pleading informs the defendant of the allegations and the basis for the claim. The rules require that the complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief" (Fed. R. Civil P. 8[a]). Rule 8(c)(1) states, "Each averment of a pleading shall be simple, concise, and direct."

Following the claim, the prayer for relief or demand for judgment appears. Commonly called the wherefore clause, the prayer for relief demands judgment for the plaintiff and relief in the form of the remedies the plaintiff requests. The plaintiff may demand relief in several forms. Money damages are compensation for injuries and loss. General money damages cover injuries directly related to the defendant's actions—such as pain and suffering, or emotional distress. Special money damages arise indirectly from the defendant's actions and may include lost wages or medical bills. The court

*A sample complaint.*

awards exemplary or **PUNITIVE DAMAGES** when the defendant's actions are particularly egregious. The purpose of punitive damages is to punish the defendant and deter similar wrongdoing. Other types of damages are recovery of property, injunctions, and **SPECIFIC**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

**PERFORMANCE** of a contractual obligation. The plaintiff may demand alternative relief or several different types of relief, in the same complaint (Fed. R. Civ. P. 8[a]).

Therefor under the color of the law, I have met all requirements to receive relief as asked for or by what the court deems to be fair.

### Obstruction of Justice

n. an attempt to interfere with the administration of the courts, the judicial system or law enforcement officers, including threatening witnesses, improper conversations with jurors, hiding evidence, or interfering with an arrest. Such activity is a crime.

Two types of cases arise under the Omnibus Clause: the concealment, alteration, or destruction of documents; and the encouraging or rendering of false testimony. Actual obstruction is not needed as an element of proof to sustain a conviction. The defendant's endeavor to obstruct justice is sufficient. "Endeavor" has been defined by the courts as an effort to accomplish the purpose the statute was enacted to prevent. The courts have consistently held that "endeavor" constitutes a lesser threshold of purposeful activity than a criminal "attempt".

Federal obstruction of justice statutes have been used to prosecute government officials who have sought to prevent the disclosure of damaging information. The Watergate scandal of the 1970s involving President Richard M. Nixon is a classic example of this type of obstruction. A number of Nixon's top aides were convicted of obstruction of justice, including former attorney general John N. Mitchell. A federal Grand Jury named Nixon himself as an unindicted coconspirator for the efforts to prevent disclosure of White House involvement in the 1972 Burglary of Democratic National Committee headquarters at the Watergate building complex in Washington, D.C.

Ther tem "obstruction of justice" refers to any action that a person willfully takes to obstruct, or hinder, the administration of justice. Obstruction of justice occurs when a person offers false information, or otherwise takes some action that frustrates an investigation or other

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

legal process. An example of an obstruction of justice would be a person lying to the court and, as a result, being handed a harsher sentence as punishment. To explore this concept, consider the following obstruction of justice definition.

"Obstruction of justice" typically refers to activities related to the obstruction of justice by elected officials. Such activities include those engaged in by judges, prosecutors, and attorneys general. Obstruction of justice by elected officials is the interference with the process of justice by:

- Withholding important information or giving false testimony

- Causing harm to or intimidating a juror, witness, or member of law enforcement

- Failing to prosecute government officials for crimes they have committed

For example, obstruction of justice by elected officials occurs when authorities discover that an individual lied during an investigation. They may also charge him or her with obstruction of justice for changing or destroying evidence related to the investigation. This is true even if the individual was not required to produce the evidence at that time.

There are several statues within the United States Code Title 18 that cover various types of obstruction of justice, including:

- Tampering with or retaliating against witnesses and informants

- Attempting to influence a juror in writing

- Stealing or altering a court record

- Picketing or parading with the intention of obstructing justice

Definition

18 U.S.C. § 1503 defines "obstruction of justice" as an act that "corruptly or by threats or force, or by any threatening letter or communication, influences, obstructs, or impedes, or endeavors to influence, obstruct, or impede, the due administration of justice".

**Conspiracy and Misconduct**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

The Defendant lives in a small tightly knit organization where the Defendant is part of an oligarchy. This group of people all go to the same social events, commemorations of special occasions and parties, their kids go to the same schools. They be at each other's houses and offices where they hold secret meetings that are not open to the public where they may talk about who they think should go to jail and who should not, who should run for a political office or not. Which some of the jury members were part of which can't be denied. All someone had to do is ask the jury members do they know the Defendant, how and from where. So knowing this fact it is not out of question that the Defendant could and did conspire against the Plaintiff. He had a number of opportunities to do so, and did. At the Plaintiff jury trial, the jurors said what they did for a living when asked by my attorneys during jury selection. So there is no doubt as to who the jurors were as they smile when asked knowing that I had a lawsuit against their employer, the City of Lorain. It was the perfect environment for a kangaroo court.

### 923. 18 U.S.C. § 371—Conspiracy to Defraud the United States

The general conspiracy statute, 18 U.S.C. § 371, creates an offense "[i]f two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose. (emphasis added). *See* Project, *Tenth Annual Survey of White Collar Crime*, 32 Am. Crim. L. Rev. 137, 379-406 (1995)(generally discussing § 371).

The operative language is the so-called "defraud clause," that prohibits conspiracies to defraud the United States. This clause creates a separate offense from the "offense clause" in Section 371. Both offenses require the traditional elements of Section 371 conspiracy, including an illegal agreement, criminal intent, and proof of an overt act.

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

Although this language is very broad, cases rely heavily on the definition of "defraud" provided by the Supreme Court in two early cases, *Hass v. Henkel*, 216 U.S. 462 (1910), and *Hammerschmidt v. United States*, 265 U.S. 182 (1924). In *Hass* the Court stated:

> The statute is broad enough in its terms to include any conspiracy for the purpose of impairing, obstructing or defeating the lawful function of any department of government . . . (A)ny conspiracy which is calculated to obstruct or impair its efficiency and destroy the value of its operation and reports as fair, impartial and reasonably accurate, would be to defraud the United States by depriving it of its lawful right and duty of promulgating or diffusing the information so officially acquired in the way and at the time required by law or departmental regulation.

*Hass*, 216 U.S. at 479-480. In *Hammerschmidt*, Chief Justice Taft, defined "defraud" as follows:

> To conspire to defraud the United States means primarily to cheat the Government out of property or money, but it also means to interfere with or obstruct one of its lawful governmental functions by deceit, craft or trickery, or at least by means that are dishonest. It is not necessary that the Government shall be subjected to property or pecuniary loss by the fraud, but only that its legitimate official action and purpose shall be defeated by misrepresentation, chicane or the overreaching of those charged with carrying out the governmental intention.

*Hammerschmidt*, 265 U.S. at 188.

The general purpose of this part of the statute is to protect governmental functions from frustration and distortion through deceptive practices. Section 371 reaches "any conspiracy for the purpose of impairing, obstructing or defeating the lawful function of any department of Government." *Tanner v. United States*, 483 U.S. 107, 128 (1987); *see Dennis v. United States*, 384 U.S. 855 (1966). The "defraud part of section 371 criminalizes any willful impairment of a legitimate function of government, whether or not the improper acts or objective are criminal under another statute." *United States v. Tuohey*, 867 F.2d 534, 537 (9th Cir. 1989).

The word "defraud" in Section 371 not only reaches financial or property loss through use of a scheme or artifice to defraud but also is designed and intended to protect the integrity of the United States and its agencies, programs and policies. *United States v. Burgin*, 621 F.2d 1352, 1356 (5th Cir.), *cert. denied*, 449 U.S. 1015 (1980); *see United States v. Herron*, 825 F.2d 50, 57-

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

58 (5th Cir.); *United States v. Winkle*, 587 F.2d 705, 708 (5th Cir. 1979), *cert. denied*, 444 U.S.

827 (1979). Thus, proof that the United States has been defrauded under this statute does not

require any showing of monetary or proprietary loss. *United States v. Conover*, 772 F.2d 765 (11th

Cir. 1985), *aff'd, sub. nom. Tanner v. United States*, 483 U.S. 107 (1987); *United States v. Del*

*Toro*, 513 F.2d 656 (2d Cir.), *cert. denied*, 423 U.S. 826 (1975); *United States v. Jacobs*, 475 F.2d

270 (2d Cir.), *cert. denied*, 414 U.S. 821 (1973).

Thus, if the defendant and others have engaged in dishonest practices in connection with a

program administered by an agency of the Government, it constitutes a fraud on the United States

under Section 371. *United States v. Gallup*, 812 F.2d 1271, 1276 (10th Cir. 1987); *Conover*, 772

F.2d at 771. In *United States v. Hopkins*, 916 F.2d 207 (5th Cir. 1990), the defendants' actions in

disguising contributions were designed to evade the Federal Election Commission's reporting

requirements and constituted fraud on the agency under Section 371.

The intent required for a conspiracy to defraud the government is that the defendant

possessed the intent (a) to defraud, (b) to make false statements or representations to the

government or its agencies in order to obtain property of the government, or that the defendant

performed acts or made statements that he/she knew to be false, fraudulent or deceitful to a

government agency, which disrupted the functions of the agency or of the government. It is

sufficient for the government to prove that the defendant knew the statements were false or

fraudulent when made. The government is not required to prove the statements ultimately resulted

in any actual loss to the government of any property or funds, only that the defendant's activities

impeded or interfered with legitimate governmental functions. *See United States v. Puerto*, 730

F.2d 627 (11th Cir.), *cert. denied*, 469 U.S. 847 (1984); *United States v. Tuohey*, 867 F.2d 534 (9th

Cir. 1989); *United States v. Sprecher*, 783 F. Supp. 133, 156 (S.D.N.Y. 1992)(Ã¾it is sufficient

that the defendant engaged in acts that interfered with or obstructed a lawful governmental function

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

by deceit, craft, trickery or by means that were dishonest"), *modified on other grounds*, 988 F.2d

318 (2d Cir. 1993).

In *United States v. Madeoy*, 912 F.2d 1486 (D.C. Cir. 1990), *cert. denied*, 498 U.S. 1105

(1991), the defendants were convicted of conspiracy to defraud the government and other offenses

in connection with a scheme to fraudulently obtain loan commitments from the Federal Housing

Administration (FHA) or Veterans Administration (VA). The court held that the district court had

properly instructed the jury that:

> the Government must prove beyond a reasonable doubt the existence of a scheme
> or artifice to defraud, with the objective either of defrauding the FHA or the VA of
> their lawful right to conduct their business and affairs free from deceit, fraud or
> misrepresentation, or of obtaining money and property from the FHA by means of
> false and fraudulent representations and promises which the defendant knew to be
> false.

*Madeoy*, 912 F.2d at 1492.

Prosecutors considering charges under the defraud prong of Section 371, and the offense

prong of Section 371 should be aware of *United States v. Minarik*, 875 F.2d 1186 (6th Cir. 1989)

holding limited, 985 F.2d 962 (1993), and related cases. *See United States v. Arch Trading*

*Company*, 987 F.2d 1087 (4th Cir. 1993). In *Minarik*, the prosecution was found to have "used the

defraud clause in a way that created great confusion about the conduct claimed to be illegal," and

the conviction was reversed. 875 F.2d at 1196. After *Minarik*, defendants have frequently

challenged indictments charging violations of both clauses, although many United States Courts

of Appeals have found it permissible to invoke both clauses of Section 371. *Arch Trading*

*Company*, 987 F.2d at 1092 (collecting cases); *see also United States v. Licciardi*, 30 F.3d 1127,

1132-33 (9th Cir. 1994)(even though the defendant may have impaired a government agency's

functions, as part of a scheme to defraud another party, the government offered no evidence that

the defendant intended to defraud the United States and a conspiracy to violate an agency

regulatory scheme could not lie on such facts).

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

In summary, those activities which courts have held defraud the United States under 18 U.S.C. § 371 affect the government in at least one of three ways:

[cited in JM 9-42.001]

1. They cheat the government out of money or property;

2. They interfere or obstruct legitimate Government activity; or

3. They make wrongful use of a governmental instrumentality.

Judicial misconduct breaks down the very fibre of what is necessary for a functional judiciary- citizens who believe their judges are fair and impartial. The judiciary cannot exist without the trust and confidence of the people. Judges must, therefore, be accountable to legal and ethical standards. In holding them accountable for their behaviour, judicial conduct review must be performed without invading the independence of judicial decision-making. This task can be daunting.

More than any other branch of government, the judiciary is built on a foundation of public faith-judges do not command armies or police forces, they do not have the power of the purse to fund initiatives and they do not pass legislation. Instead, they make rulings on the law. Rulings that the people must believe came from competent, lawful and independent judicial officers.

Judicial misconduct comes in many forms and ethical standards address problematic actions, omissions and relationships that deplete public confidence. Common complaints of ethical misconduct include improper demeanour; failure to properly disqualify when the judge has a conflict of interest; engaging in *ex parte* communication and failure to execute their judicial duties in a timely fashion. Behaviour outside of the courtroom can also be at issue. Judicial conduct oversight should not attempt to regulate purely personal aspects of a judge's life. However, a judge can commit misconduct by engaging in personal behaviour that calls their judicial integrity into question. This is true even if the same behaviour would merely be considered unwise for the average citizen. As the saying goes, the robe magnifies the conduct. Obvious examples are

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

violations of criminal law, sexual misconduct with staff/attorneys/parties, joining discriminatory organizations and using the judicial position to enhance a private interest.

Many codes of judicial conduct also include general language that urges judges to preserve the integrity of the judiciary and avoid even the appearance of impropriety. For example, the preamble to the Arkansas Code of Judicial Conduct states that, "judges should maintain the dignity of the office at all times and avoid both impropriety and the appearance of impropriety in their professional and personal lives." [1]

At what point is a judge's ruling so far afield of precedent and legal code or such an egregious violation of fundamental rights that it appears the judge is acting with impunity towards the law? Generally, the decisions of a judge should be left for judicial review, not for critique by a conduct commission. However, incidents where people are jailed without due process, judges inventing improper remedies for cases, or a breakdown in the rule of law can rise to the level of judicial misconduct. Regulating that type of behaviour without violating separation of powers or decision-making independence becomes a walk on the edge of knife.

Implementing a meaningful way for the public to be protected from judicial misconduct is vital-- there has to be review. Furthermore, it must be done with minimal risk of unlawful intervention by forces trying to prevent unpopular, but correct, rulings on the law. Of course, a proper system to protect the judges' rights to contest ethical charges must be in place. If there is a finding that a judge violated judicial ethics standards, then determining a sanction or remedy would be the next step. A well-equipped conduct commission must have appropriate remedies available. Public discipline serves the dual purpose of correcting the judge in question, as well as educating others in the judiciary. Conduct commissions typically have the authority to publish warnings or reprimands for unethical behaviour. Remedial measures may be ordered requiring, by way of example, mentoring, monitoring or additional education. The rare and serious sanctions of

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

suspension or removal from office are reserved for only the most egregious instances of misconduct.

It behoves the judiciary to support measures that hold it accountable. While the majority of judges serve with honour, ethical missteps should be corrected, and major breaches of trust should be acknowledged. The judiciary should be willing to help develop ethical standards and be an active part of any enforcement mechanism.

To quote former United States President Theodore Roosevelt: "No man is above the law and no man is below it; nor do we ask any man's permission when we ask him to obey it. Obedience to the law is demanded as a right, not asked as a favor." The judges who administer justice in our countries must be seen as ethical and subject to meaningful correction when it is necessary. Nothing less than the rule of law is at stake.

**Examples of Judges of Judicial Misconduct**

**Wade Harper McCree**

Judge Wade Harper McCree, formerly of the 3rd Circuit Court in Wayne County, Michigan, was removed from the bench for conducting an affair with Geniene La'Shay Mott, a party to a child support case over which McCree was presiding. McCree failed to recuse himself from her case while he engaged in sexual intercourse with Mott in his judicial chambers and traded lurid texts with her while working.[3]

McCree previously garnered some notoriety for sending a half-nude photo of himself to a court bailiff, and thus earning the moniker "shirtless judge." When confronted for a statement, McCree only responded with: "Hot dog" and "[t]here's no shame in my game."[4]

McCree was suspended without pay in May 2013 during the course of the investigation. The Michigan Supreme Court officially removed him from the bench on March 26, 2014, and ordered him to pay $12,000 in fines.[5]

**John C. Murphy**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

Judge John C. Murphy of Brevard County, Florida, made headlines in June 2014, when he was recorded on camera challenging a public defender to a fistfight. Andrew Weinstock, the public defender acting in the normal course of representation, had refused to have his client waive the right to a trial. This set off a number of heated remarks which included Judge Murphy stating: "You know, if I had a rock, I would throw it at you right now."[6] When Weinstock refused to sit down, Judge Murphy then told him: "If you want to fight, let's go out back and I'll just beat your ass."[6][7]

The two then took it outside of the courtroom, and what followed was not caught on camera. However, sounds of impact could be heard clearly on the recording, and initial reports accused Murphy of punching Weinstock in the face. Deputy Bryon Griffin, who was at the scene, described it as follows:

> I stepped into the back hallway and saw the two of them grabbing ahold of each other's suitcoat, pushing each other back and forth...I heard Judge Murphy say, 'Do you wanna f-ck with me, do you?' and I heard Mr. Weinstock say, 'Alright.' I immediately stepped in and separated the two of them as they still had a grasp on each other.[8]
>
> —Deputy Bryon Griffin[9]

Murphy later apologized in an open letter to the county's residents. However, on August 13, 2014, Florida's Judicial Qualifications Commission proceeded with formal charges against Murphy for his conduct while on the bench.[10]

**Joan Orie Melvin**

On May 18, 2012, former Pennsylvania Supreme Court Justice Joan Orie Melvin was indicted by a grand jury for utilizing her staff at the superior court during her campaigns for the supreme court in 2003 and 2009. In addition, she was accused of being directly involved in using the campaign staff of her sister, former state Senator Jane Orie, to benefit her own campaigns.[11][12] On February 21, 2013, a jury found Orie Melvin guilty of felony theft of services, conspiracy to commit theft of services, misdemeanor misapplication of government property, and conspiracy to

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

tamper with evidence.[13] Orie Melvin was sentenced to house arrest for three years, with leave three days a week to serve at a soup kitchen and attend church. She was also ordered to pay $55,000 in fines and court costs and to send an apology letter--along with a photograph of herself in handcuffs--to every judge in the state (over 500 judges).

Orie Melvin, who had insisted that she was innocent and contended the charges against her were politically motivated, appealed the last portion of the order regarding the apology letters because it violated her right to avoid self-incrimination.[14][15][16] The Pennsylvania Superior Court agreed only in part, stating that while the photographs were unnecessary, the court would enforce the written apology letters in order to address "the trial court's intent to rehabilitate her by requiring her to acknowledge her wrongdoing."[17]

**Mark Fuller**

Judge Mark Fuller, a federal judge for the U.S. District Court for the Middle District of Alabama, was arrested and charged with domestic violence on August 9, 2014.[18] According to police reports, Fuller's wife sustained injuries to her mouth and forehead after he threw her on the ground, pulled her hair and kicked her. The fight allegedly occurred when Fuller's wife confronted him about his affair with a law clerk.[19] Fuller was charged with misdemeanor battery and spent the night in jail.

This was not the first time Fuller had been accused of domestic violence. Fuller's divorce records from a prior marriage accused him of domestic violence, drug abuse, and engaging in extramarital affairs.[20]

On September 5, 2014, Fuller accepted a plea deal, whereby he would have his misdemeanor battery charge dismissed and his record expunged upon the completion of a 24-week court program.[21] In response, members of Alabama's congressional delegation called on Judge Fuller to resign from the court, regardless of the results of an investigation being conducted by the Eleventh Circuit.[22]

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

### General Defamation Law

In Ohio, as elsewhere, defamation is a legal term meaning injury to a person's reputation or business due to the publication or dissemination of negative (defamatory) information about him.  Defamation can be written (libel) or oral (slander).  To be defamatory, a statement must not only be harmful, it must also be untrue.  If the defamatory statement concerns private matters and individuals, the plaintiff in a defamation act must prove the statement was false.  If, however, it concerns public matters or public figures, the defendant must prove the statement was true.

### Defamation Defined

Defamation is typically defined as a false statement someone makes about you, which they publish as a statement of fact, and which harms your personal and/or professional reputation or causes you other damages, including financial loss and emotional distress.

A statement that is merely someone's opinion is not defamatory, unless it is presented as if it were a fact. If someone writes, "It seems to me that John Smith is a crooked politician," that most likely is protected opinion. Courts do not want to hinder public speech, even about controversial subjects, so opinions generally are protected speech. However, if the statement is "John Smith *is* a crooked politician," and it is not a true statement, it may be defamatory. It is a fine distinction to bear in mind, but an important one.

### What Defamation Claimants Need to Prove

To prevail on a defamation claim if you are a private individual, you must first prove that the statement was false. If the statement is true, no matter how unflattering it may be, your claim will be barred because truth is an absolute defense to a defamation action.

In addition, you will usually need to prove that the statement was made by a person who either knew it was false at the time, or showed "reckless disregard" for whether it was true or false.

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

Finally, the statement also must be published. The most common examples of publication would be posting online, inclusion in a newspaper or magazine, or repetition on a news broadcast, but if the speaker repeats the statement to any third party, it may still constitute defamation.

In the average case, if you can prove these three things (false statement, made knowingly or recklessly, and published to others), a court will presume that you have suffered damages without any showing of harm, and you could receive compensation for provable losses. But, to recover so-called "punitive damages," damages intended to make an example of the person or entity that made the statement, you would need to show that the statement was made maliciously, which is a more difficult showing to make.

Likewise, if you are a public figure or official (such as a celebrity or politician or a member of local government), you also must prove that actual malice existed in the making of the statement. This is because courts will presume that, being in the public eye, it is more likely that various statements will be made about you, and that many of them will be opinions. Because people who place themselves in the public domain are more likely to be exposed to questionable statements, it is harder for them to succeed with a defamation claim.

**Defamation in the Real World**

An example of a defamatory statement may be an accusation made against a public official—such as a claim that he or she took a bribe or committed a crime, assuming the allegation is presented as fact. An accusation of "police brutality" or immorality may also be defamatory. Allegations of adultery or other sexual misconduct may be considered defamatory if they are false.

Today, the pervasiveness of social media posts and other online content makes it difficult to draw the line between opinion and defamatory speech. But not everything posted online is automatically deemed opinion. This area of the law is constantly evolving.

**The Privileged Statement**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

In order for a statement to be considered libelous or slanderous, it must have been made without the assumption of privilege.  A privileged statement means that the person giving the statement is free or duty-bound to state whatever he pleases in order to provide a full account of a situation.

No person shall make, publish, disseminate, or circulate, directly or indirectly, or aid, abet or encourage the making, publishing, disseminating or circulating of any oral or written statement or any pamphlet, circular, article or literature that is false, and maliciously critical of, or derogatory to, any person with respect to the business of insurance or with respect to any person in the conduct of his insurance business and that is calculated to injure that person.

-Defamation Code of Virginia §38.2-504

## Persons

In this section of the Plaintiff's brief, he feels it is important to note and establish that he is a human being and an American Citizen with all the rights it holds.  Therefor the Plaintiff states I am not an animal or a robot.  I am a human, I am not a dog or a cat.  What I am is an American Citizen and therefor I have civil and constitutional rights.  Which the Defendant denied me of in my criminal court case which they unlawfully held against me.  They had no real evidence or realistic chance or hope of winning in a fair and impartial trial.

It is of utmost importance to understand the context of "person".  In most cases, it has a very limited scope and does not mean "one of the people".  As you will see below, "person" is a legislator's Swiss Army knife; it can perform a different function depending on the need.  "Person" is as generic as can be.

You can be a person; so can a corporation, a business, a corpse— whatever the definitions specify in the relevant statute.

> "*Juridical person. Entity, as a firm, that is not a single <u>natural person</u>, as a human being, authorized by law with duties and rights, recognized as a legal authority*

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

*having a distinct identity, a <u>legal personality</u>. Also known as <u>artificial person</u>, juridical entity, juristic person, or legal person. Also refer to <u>body corporate</u>."*

The following is merely a random finding of "person" being described by what it may or may not be. One thing it may be is corporate.

**§ 47B-2. Marketable record title to estate in real property; 30-year unbroken chain of title of record; effect of marketable title.**

*(c)      Subject to the matters stated in G.S. 47B-3, such marketable record title shall be free and clear of all rights, estates, interests, claims or charges whatsoever, the existence of which depends upon any act, title transaction, event or omission that occurred prior to such 30-year period. All such rights, estates, interests, claims or charges, however denominated, whether such rights, estates, interests, claims or charges are or appear to be held or asserted by a person sui juris or under a disability, whether such person is natural or corporate, or is private or governmental, are hereby declared to be null and void.*

So you can be a natural **or** corporate person. You can be Sui Juris* **or** in disability. You can be private **or** governmental. These statements should be clear to the average reader.

> *\* Sui Juris. Of his own right; possessing full social and <u>civil rights</u>; not under any legal disability, or the power of another, or <u>guardianship</u>. Having capacity to manage one's own affairs; not under legal disability to act for one's self.*

What is required to be a legal person or legal entity? For one, if you hail from a county in North Carolina, you are part of a collective body referred to as a body politic and corporate:

---

**§ 153A-11.  Corporate powers.**

*The inhabitants of each county are a body politic and corporate under the name specified in the act creating the county. Under that name they are vested with all the property and rights of property belonging to the corporation; have perpetual succession; may sue and be sued; may*

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

*contract and be contracted with; may acquire and hold any property and rights of property, real and personal, that may be devised, sold, ...*

Simply claiming that county as your home is enough to create a presumption that you are or desire to be a part of the local government.  A county is admittedly a corporation.  Members, officers or constituents of a corporation are all subordinate to that governing body and cannot have more powers or rights than the corporation.  This is a definition of constituent by synonym/example:

*"**Constituent.** (Part), noun <u>balloter</u>, <u>component</u>, component part, <u>division</u>, <u>element</u>, <u>elementum</u>, <u>factor</u>, <u>feature</u>, <u>fraction</u>, <u>fragment</u>, <u>included</u>, <u>ingredient</u>, <u>installment</u>, **<u>integral part</u>**, <u>integrant</u>, <u>integrant part</u>, <u>one of</u>, <u>pars</u>, **<u>part</u>**, <u>part and parcel</u>, <u>particle</u>, <u>piece</u>, <u>section</u>, <u>sector</u>, <u>segment</u>, **<u>subdivision</u>**."*

Simply put, a part of the whole.  The following section of law should be an eye-opener at this point.  In this entry, we see what status our elected officials truly hold.

*"**Chapter 138A: State Government Ethics Act.**

§ 138A-2.  Purpose.*

*The purpose of this Chapter is to ensure that **elected and appointed State agency officials** exercise their authority honestly and fairly, free from impropriety, threats, favoritism, and undue influence. To this end, it is the intent of the General Assembly in this Chapter to ensure that standards of ethical conduct and standards regarding conflicts of interest are clearly established for elected and appointed State agency officials, that the State continually educates these officials on matters of ethical conduct and conflicts of interest, that potential and actual conflicts of interests are identified and resolved, and that violations of standards of ethical conduct and conflicts of interest are investigated and properly addressed. (2006-201, s. 1.)*

*§ 138A-3.  Definitions.*

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

*(27)    Person. – Any individual, firm, partnership, committee, association, corporation, business, or any other organization or group of persons acting together. The term "person"* **does not include the State, a political subdivision of the State, a board, or any other entity or organization created by the State or a political subdivision of the State."**

These people, the elected and appointed State agency officials to whom the Ethics Act applies, are not a part of the body politic and corporate, as they are not a subdivision of the state or county (a county is a subdivision of a state). Perhaps it is clear to any reader now that we are being ruled by those to whom different rules apply. You probably already knew that; you may not have known that there was a legal basis for this behavior on their part. Essentially, we have volunteered into a lesser status, subordinate to the governing body. We serve it, rather than the government serving us. We have blindly taken on the role of citizens, and left the status of "People" behind.

However, it could therefore be argued that those in charge have not left their full body of rights behind. Are they the only "We the People" left?

Right about now, we should be thinking of asking the NC legislators why they have set themselves apart with different rules applying to them.

Again, if you are an inhabitant of the county, you are a component part of the county, not above it and directing its actions. Does that mean you have to move? No. Simply do not claim to be an inhabitant or write the county in any fields on any forms. That's a start.

### Immunity Laws Rights and History

Because Eleventh Amendment sovereign immunity inheres in states and not their subdivision or establishments, a state agency that wishes to claim state sovereign immunity must establish that it is acting as an arm of the state: "agencies exercising state power have been permitted to invoke the [Eleventh] Amendment in order to protect the state treasury from liability that would have had essentially the same practical consequences as a judgment against the State

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

itself."[68] In evaluating such a claim, the Court will examine state law to determine the nature of the entity, and whether to treat it as an arm of the state.[69] The Court has consistently refused to extend Eleventh Amendment sovereign immunity to counties, cities, or towns,[70] even though such political subdivisions exercise a "slice of state power."[71] Even when such entities enjoy immunity from suit under state law, they do not have Eleventh Amendment immunity in federal court and the states may not confer it.[72] Similarly, entities created pursuant to interstate compacts (and subject to congressional approval) are not immune from suit, absent a showing that the entity was structured so as to take advantage of the state's constitutional protections.[73]

*Consent to Suit and Waiver.*—The immunity of a state from suit is a privilege which it may waive at its pleasure. A state may expressly consent to being sued in federal court by statute.[74] But the conclusion that there has been consent or a waiver is not lightly inferred; the Court strictly construes statutes alleged to consent to suit. Thus, a state may waive its immunity in its own courts without consenting to suit in federal court,[75] and a general authorization "to sue and be sued" is ordinarily insufficient to constitute consent.[76] "The Court will give effect to a State's waiver of Eleventh Amendment immunity 'only where stated by the most express language or by such overwhelming implication from the text as [will] leave no room for any other reasonable construction.' A State does not waive its Eleventh Amendment immunity by consenting to suit only in its own courts, and '[t]hus, in order for a state statute or constitutional provision to constitute a waiver of Eleventh Amendment immunity, it must specify the State's intention to subject itself to suit in *federal court*.'"[77]

Thus, in *Port Authority Trans-Hudson Corp. v. Feeney*,[78] an expansive consent "to suits, actions, or proceedings of any form or nature at law, in equity or otherwise" was deemed too "ambiguous and general" to waive immunity in federal court, because it might be interpreted to reflect only a state's consent to suit in its own courts. But, when combined with language specifying that consent was conditioned on venue being laid "within a county or judicial district,

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

established by one of said States or by the United States, and situated wholly or partially within

the Port of New York District," waiver was effective.[79]

In a few cases, the Court has found a waiver by implication, but the vitality of these cases

is questionable. In *Parden v. Terminal Railway*,[80] the Court ruled that employees of a state-owned

railroad could sue the state for damages under the Federal Employers' Liability Act. One of the

two primary grounds for finding lack of immunity was that by taking control of a railroad which

was subject to the FELA, enacted some 20 years previously, the state had effectively accepted the

imposition of the Act and consented to suit.[81] Distinguishing *Parden* as involving a proprietary

activity,[82] the Court later refused to find any implied consent to suit by states participating in

federal spending programs; participation was insufficient, and only when waiver has been "stated

by the most express language or by such overwhelming implications from the text as [will] leave

no room for any other reasonable construction," will it be found.[83] . Further, even if a state becomes

amenable to suit under a statutory condition on accepting federal funds, remedies, especially

monetary damages, may be limited, absent express language to the contrary.[84]

A state may waive its immunity by initiating or participating in litigation. In *Clark v.

Barnard*,[85] the state had filed a claim for disputed money deposited in a federal court, and the

Court held that the state could not thereafter complain when the court awarded the money to

another claimant. However, the Court is loath to find a waiver simply because of the decision of

an official or an attorney representing the state to litigate the merits of a suit, so that a state may at

any point in litigation raise a claim of immunity based on whether that official has the authority

under state law to make a valid waiver.[86] However, this argument is only available when the state

is brought into federal court involuntarily. If a state voluntarily agrees to removal of a state action

to federal court, the Court has held it may not then invoke a defense of sovereign immunity and

thereby gain an unfair tactical advantage.[87]

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

*Congressional Withdrawal of Immunity.*—The Constitution grants Congress power to regulate state action by legislation. At least in some instances when Congress does so, it may subject the states themselves to suit by individuals to implement the legislation. The clearest example arises from the Civil War Amendments, which directly restrict state powers and expressly authorize Congress to enforce these restrictions through appropriate legislation.[88] Thus, "the Eleventh Amendment and the principle of state sovereignty which it embodies . . . are necessarily limited, by the enforcement provisions of § 5 of the Fourteenth Amendment."[89] The power to enforce the Civil War Amendments is substantive, however, not being limited to remedying judicially cognizable violations of the amendments, but extending as well to measures that in Congress's judgment will promote compliance.[90] The principal judicial brake on this power to abrogate state immunity in legislation enforcing the Civil War Amendments is the rule requiring that congressional intent to subject states to suit be clearly stated.[91]

In the 1989 case of *Pennsylvania v. Union Gas Co.*,[92] the Court— temporarily at least— ended years of uncertainty by holding expressly that Congress acting pursuant to its Article I powers (as opposed to its Fourteenth Amendment powers) may abrogate the Eleventh Amendment immunity of the states, so long as it does so with sufficient clarity. Twenty-five years earlier the Court had stated that same principle,[93] but only as an alternative holding, and a later case had set forth a more restrictive rule.[94] The premises of *Union Gas* were that by consenting to ratification of the Constitution, with its Commerce Clause and other clauses empowering Congress and limiting the states, the states had implicitly authorized Congress to divest them of immunity, that the Eleventh Amendment was a restraint upon the courts and not similarly upon Congress, and that the exercises of Congress's powers under the Commerce Clause and other clauses would be incomplete without the ability to authorize damage actions against the states to enforce congressional enactments. The dissenters disputed each of these strands of the argument, and,

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

while recognizing the Fourteenth Amendment abrogation power, would have held that no such power existed under Article I.

*Pennsylvania v. Union Gas* lasted less than seven years before the Court overruled it in *Seminole Tribe of Florida v. Florida*.[95] Chief Justice Rehnquist, writing for a 5–4 majority, concluded *Union Gas* had deviated from a line of cases, tracing back to *Hans v. Louisiana*,[96] that viewed the Eleventh Amendment as implementing the "fundamental principle of sovereign immunity [that] limits the grant of judicial authority in Article III."[97] Because "the Eleventh Amendment restricts the judicial power under Article III, . . . Article I cannot be used to circumvent the constitutional limitations placed upon federal jurisdiction."[98] Subsequent cases have upheld this interpretation.[99]

Section 5 of the Fourteenth Amendment, of course, is another matter. *Fitzpatrick v. Bitzer*,[100] which was "based upon a rationale wholly inapplicable to the Interstate Commerce Clause, viz. , that the Fourteenth Amendment, adopted well after the adoption of the Eleventh Amendment and the ratification of the Constitution, operated to alter the pre-existing balance between state and federal power achieved by Article III and the Eleventh Amendment," remains good law.[101] This ruling has led to a significant number of cases that examined whether a statute that might be applied against non-state actors under an Article I power, could also, under section 5 of the Fourteenth Amendment, be applied against the states.[102]

In another line of case, a different majority of the Court focused not so much on the authority Congress used to subject states to suit as on the language Congress used to overcome immunity. Henceforth, the Court held in a 1985 decision, and even with respect to statutes that were enacted prior to promulgation of this judicial rule of construction, "Congress may abrogate the States' constitutionally secured immunity from suit in federal court only by making its intention unmistakably clear *in the language of the statute*" itself.[103] This means that no legislative history will suffice at all.[104]

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

Indeed, at one time a plurality of the Court apparently believed that only if Congress refers specifically to state sovereign immunity and the Eleventh Amendment will its language be unmistakably clear.[105] Thus, the Court held in *Atascadero* that general language subjecting to suit in federal court "any recipient of Federal assistance" under the Rehabilitation Act was deemed insufficient to satisfy this test, not because of any question about whether states are "recipients" within the meaning of the provision but because "given their constitutional role, the states are not like any other class of recipients of federal aid."[106] As a result of these rulings, Congress began to use the "magic words" the Court appeared to insist on.[107] Later, however, the Court has accepted less precise language,[108] and in at least one context, has eliminated the requirement of specific abrogation language altogether.[109]

Even before the decision in *Alden v. Maine*,[110] when the Court believed that Eleventh Amendment sovereign immunity did not apply to suits in state courts, the Court applied its rule of strict construction to require "unmistakable clarity" by Congress in order to subject states to suit.[111] Although the Court was willing to recognize exceptions to the clear statement rule when the issue involved subjection of states to suit in state courts, the Court also suggested the need for "symmetry" so that states' liability or immunity would be the same in both state and federal courts.[112]

---

[64] *See* Tennessee Student Assistance Corp. v. Hood, 541 U.S. 440, 446–48 (2004) (exercise of bankruptcy court's *in rem* jurisdiction over a debtor's estate to discharge a debt owed to a state does not infringe the state's sovereignty); California v. Deep Sea Research, Inc., 523 U.S. 491, 507–08 (1998) (despite state claims over shipwrecked vessel, the Eleventh Amendment does not bar federal court *in rem* admiralty jurisdiction where the *res* is not in the possession of the sovereign).

[65] Central Virginia Community College v. Katz, 546 U.S. 356, 362–63 (2006).

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

[66] A "preferential transfer" was defined as the transfer of a property interest from an insolvent debtor to a creditor, which occurred on or within 90 days before the filing of a bankruptcy petition, and which exceeds what the creditor would have been entitled to receive under such bankruptcy filing. 11 U.S.C. § 547(b).

[67] 546 U.S. at 373.

[68] Lake County Estates v. Tahoe Regional Planning Agency, 440 U.S. 391, 400–01 (1979), *citing* Edelman v. Jordan, 415 U.S. 651 (1974), and Ford Motor Co. v. Department of Treasury, 323 U.S. 459 (1945). The fact that a state agency can be indemnified for the costs of litigation does not divest the agency of its Eleventh Amendment immunity. Regents of the University of California v. Doe, 519 U.S. 425 (1997).

[69] *See, e.g.*, Mt. Healthy City Bd. of Educ. v. Doyle, 429 U.S. 274, 280 (1977) (local school district not an arm of the state based on (1) its designation in state law as a political subdivision, (2) the degree of supervision by the state board of education, (3) the level of funding received from the state, and (4) the districts' empowerment to generate their own revenue through the issuance of bonds or levying taxes.

[70] Northern Insurance Company of New York v. Chatham County, 547 U.S. 189, 193 (2006) (counties have neither Eleventh Amendment immunity nor residual common law immunity). *See* Mt. Healthy City Bd. of Educ. v. Doyle, 429 U.S. 274 (1977); Moor v. County of Alameda, 411 U.S. 693 (1973); Workman v. City of New York, 179 U.S. 552 (1900); Lincoln County v. Luning, 133 U.S. 529 (1890). In contrast to their treatment under the Eleventh Amendment, the Court has found that state immunity from federal regulation under the Tenth Amendment extends to political subdivisions as well. *See* Printz v. United States, 521 U.S. 898 (1997).

[71] Lake County Estates v. Tahoe Regional Planning Agency, 440 U.S. 391, 400–01 (1979) (quoting earlier cases).

[72] Chicot County v. Sherwood, 148 U.S. 529 (1893).

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

[73] Lake County Estates v. Tahoe Regional Planning Agency, 440 U.S. 391 (1979); Petty v. Tennessee-Missouri Bridge Comm'n, 359 U.S. 275 (1959).

[74] Gunter v. Atlantic Coast Line R.R., 200 U.S. 273, 284 (1906).

[75] Smith v. Reeves, 178 U.S. 436 (1900); Murray v. Wilson Distilling Co., 213 U.S. 151, 172 (1909); Graves v. Texas Co., 298 U.S. 393, 403–04 (1936); Great Northern Life Ins. Co. v. Read, 322 U.S. 47 (1944).

[76] Great Northern Life Ins. Co. v. Read, 322 U.S. 47, 54 (1944); Ford Motor Co. v. Department of Treasury, 323 U.S. 459 (1945); Kennecott Copper Corp. v. State Tax Comm'n, 327 U.S. 573 (1947); Petty v. Tennessee-Missouri Bridge Comm'n, 359 U.S. 275 (1959); Florida Dep't of Health v. Florida Nursing Home Ass'n, 450 U.S. 147 (1981). *Compare* Patsy v. Florida Bd. of Regents, 457 U.S. 496, 519 n.* (1982) (Justice White concurring), *with* id. at 522 and n.5 (Justice Powell dissenting).

[77] Port Authority Trans-Hudson Corp. v. Feeney, 495 U.S. 299, 305–06 (1990) (internal citations omitted; emphasis in original).

[78] 495 U.S. 299 (1990).

[79] 495 U.S. at 306–07. *But see* Atascadero State Hosp. v. Scanlon, 473 U.S. 234, 241 (1985).

[80] 377 U.S. 184 (1964). The alternative but interwoven ground had to do with Congress's power to withdraw immunity. *See also* Petty v. Tennessee-Missouri Bridge Comm'n, 359 U.S. 275 (1959).

[81] The implied waiver issue aside, *Parden* subsequently was overruled, a plurality of the Court emphasizing that Congress had failed to abrogate state immunity unmistakably. Welch v. Texas Dep't of Highways and Pub. Transp., 483 U.S. 468 (1987). Justice Powell's plurality opinion was joined by Chief Justice Rehnquist and by Justices White and O'Connor. Justice Scalia, concurring, thought *Parden* should be overruled because it must be assumed that Congress enacted the FELA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

and other statutes with the understanding that *Hans v. Louisiana* shielded states from immunity. *Id.* at 495.

[82] *Edelman v. Jordan*, 415 U.S. 651, 671–72 (1974). For the same distinction in the Tenth Amendment context, *see National League of Cities v. Usery*, 426 U.S. 833, 854 n.18 (1976).

[83] *Edelman v. Jordan*, 415 U.S. 651 (1974) (quoting *id.* at 673, *Murray v. Wilson Distilling Co.*, 213 U.S. 151, 171 (1909)); *Florida Dep't of Health v. Florida Nursing Home Ass'n*, 450 U.S. 147 (1981). Of the four *Edelman* dissenters, Justices Marshall and Blackmun found waiver through knowing participation, 415 U.S. at 688. In *Florida Dep't*, Justice Stevens noted he would have agreed with them had he been on the Court at the time but that he would now adhere to *Edelman*. *Id.* at 151.

[84] *Sossamon v. Texas*, 563 U.S. ___, No. 08–1438, slip op. (2011).

[85] 108 U.S. 436 (1883).

[86] *Ford Motor Co. v. Department of Treasury*, 323 U.S. 459, 466–467 (1945); *Edelman v. Jordan*, 415 U.S. 651, 677–678 (1974).

[87] *Lapides v. Board of Regents*, 535 U.S. 613 (2002).

[88] *Fitzpatrick v. Bitzer*, 427 U.S. 445 (1976); *Hutto v. Finney*, 437 U.S. 678 (1978); *City of Rome v. United States*, 446 U.S. 156 (1980). More recent cases affirming Congress's § 5 powers include *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 99 (1984); *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 238 (1985); and *Dellmuth v. Muth*, 491 U.S. 223, 227 (1989).

[89] *Fitzpatrick v. Bitzer*, 427 U.S. 445, 456 (1976) (under the Fourteenth Amendment, Congress may "provide for private suits against States or state officials which are constitutionally impermissible in other contexts.").

[90] In *Maher v. Gagne*, 448 U.S. 122 (1980), the Court found that Congress could validly authorize imposition of attorneys' fees on the state following settlement of a suit based on both constitutional and statutory grounds, even though settlement had prevented determination that there had been a

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

constitutional violation. Maine v. Thiboutot, 448 U.S. 1 (1980), held that § 1983 suits could be premised on federal statutory as well as constitutional grounds. Other cases in which attorneys' fees were awarded against states are Hutto v. Finney, 437 U.S. 678 (1978); and New York Gaslight Club v. Carey, 447 U.S. 54 (1980). *See also* Frew v. Hawkins, 540 U.S. 431 (2004) (upholding enforcement of consent decree).

[91] Even prior to the tightening of the clear statement rule over the past several subject application of the rule curbed congressional enforcement. Fitzpatrick v. Bitzer, 427 U.S. 445 451–53 (1976); Hutto v. Finney, 437 U.S. 678, 693–98 (1978). Because of its rule of clear statement, the Court in Quern v. Jordan, 440 U.S. 332 (1979), held that in enacting 42 U.S.C. § 1983, Congress had not intended to include states within the term "person" for the purpose of subjecting them to suit. The question arose after Monell v. New York City Dep't of Social Services, 436 U.S. 658 (1978), reinterpreted "person" to include municipal corporations. *Cf.* Alabama v. Pugh, 438 U.S. 781 (1978). The Court has reserved the question whether the Fourteenth Amendment itself, without congressional action, modifies the Eleventh Amendment to permit suits against states, Milliken v. Bradley, 433 U.S. 267, 290 n.23 (1977), but the result in *Milliken*, holding that the Governor could be enjoined to pay half the cost of providing compensatory education for certain schools, which would come from the state treasury, and in Scheuer v. Rhodes, 416 U.S. 232 (1974), permitting imposition of damages upon the governor, which would come from the state treasury, is suggestive. *But see* Mauclet v. Nyquist, 406 F. Supp. 1233 (W.D.N.Y. 1976) (refusing money damages under the Fourteenth Amendment), appeal dismissed sub nom. Rabinovitch v. Nyquist, 433 U.S. 901 (1977). The Court declined in *Ex parte* Young, 209 U.S. 123, 150 (1908), to view the Eleventh Amendment as modified by the Fourteenth.

[92] 491 U.S. 1 (1989). The plurality opinion of the Court was by Justice Brennan and was joined by the three other Justices who believed *Hans* was incorrectly decided. *See* id. at 23 (Justice Stevens concurring). The fifth vote was provided by Justice White, id. at 45, 55–56 (Justice White

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

concurring), although he believed *Hans* was correctly decided and ought to be maintained and although he did not believe Congress had acted with sufficient clarity in the statutes before the Court to abrogate immunity. Justice Scalia thought the statutes were express enough but that Congress simply lacked the power. Id. at 29. Chief Justice Rehnquist and Justices O'Connor and Kennedy joined relevant portions of both opinions finding lack of power and lack of clarity.

93 Parden v. Terminal Railway, 377 U.S. 184, 190–92 (1964). *See also* Employees of the Dep't of Pub. Health and Welfare v. Department of Pub. Health and Welfare, 411 U.S. 279, 283, 284, 285–86 (1973).

94 Edelman v. Jordan, 415 U.S. 651, 672 (1974).

95 517 U.S. 44 (1996) (invalidating a provision of the Indian Gaming Regulatory Act authorizing an Indian tribe to sue a state in federal court to compel performance of a duty to negotiate in good faith toward the formation of a compact).

96 134 U.S. 1 (1890).

97 517 U.S. at 64 (quoting Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89, 97–98 (1984).

98 517 U.S. at 72–73. Justice Souter's dissent undertook a lengthy refutation of the majority's analysis, asserting that the Eleventh Amendment is best understood, in keeping with its express language, as barring only suits based on diversity of citizenship, and as having no application to federal question litigation. Moreover, Justice Souter contended, the state sovereign immunity that the Court mistakenly recognized in Hans v. Louisiana was a common law concept that "had no constitutional status and was subject to congressional abrogation." 517 U.S. at 117. The Constitution made no provision for wholesale adoption of the common law, but, on the contrary, was premised on the view that common law rules would always be subject to legislative alteration. This "imperative of legislative control grew directly out of the Framers' revolutionary idea of popular sovereignty." Id. at 160.

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

[99] College Savings Bank v. Florida Prepaid Postsecondary Educ. Expense Bd., 527 U.S. 666 (1999) (the Trademark Remedy Clarification Act, an amendment to the Lanham Act, did not validly abrogate state immunity); Florida Prepaid Postsecondary Educ. Expense Bd. v. College Savings Bank, 527 U.S. 627 (1999) (amendment to patent laws abrogating state immunity from infringement suits is invalid); Kimel v. Florida Bd. of Regents, 528 U.S. 62 (2000) (abrogation of state immunity in the Age Discrimination in Employment Act is invalid).

[100] 427 U.S. 445 (1976).

[101] *Seminole Tribe*, 517 U.S. at 65–66.

[102] *See* Fourteenth Amendment, Congressional Definition of Fourteenth Amendment Rights, *infra*.

[103] Atascadero State Hosp. v. Scanlon, 473 U.S. 234, 242 (1985) (emphasis added).

[104] See, particularly, Dellmuth v. Muth, 491 U.S. 223, 230 (1989) ("legislative history generally will be irrelevant"), and Hoffman v. Connecticut Dep't of Income Maintenance, 492 U.S. 96, 103–04 (1989).

[105] Justice Kennedy for the Court in *Dellmuth*, 491 U.S. at 231, expressly noted that the statute before the Court did not demonstrate abrogation with unmistakably clarity because, inter alia, it "makes no reference whatsoever to either the Eleventh Amendment or the States' sovereign immunity." Justice Scalia, one of four concurring Justices, expressed an "understanding" that the Court's reasoning would allow for clearly expressed abrogation of immunity "without explicit reference to state sovereign immunity or the Eleventh Amendment." Id. at 233.

[106] Atascadero State Hosp. v. Scanlon, 473 U.S. 234, 246 (1985). *See also* Dellmuth v. Muth, 491 U.S. 223 (1989).

[107] In 1986, following *Atascadero*, Congress provided that states were not to be immune under the Eleventh Amendment from suits under several laws barring discrimination by recipients of federal financial assistance. Pub. L. 99–506, § 1003, 100 Stat. 1845 (1986), 42 U.S.C. § 2000d–7. Following *Dellmuth*, Congress amended the statute to insert the explicit language. Pub. L. 101–

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

476, § 103, 104 Stat. 1106 (1990), 20 U.S.C. § 1403. *See also* the Copyright Remedy Clarification Act, Pub. L. 101–553, § 2, 104 Stat. 2749 (1990), 17 U.S.C. § 511 (making states and state officials liable in damages for copyright violations).

[108] Kimel v. Florida Board of Regents, 528 U.S. 62, 74–78 (2000). In *Kimel*, statutory language authorized age discrimination suits "against any employer (including a public agency)," and a "public agency" was defined to include "the government of a State or political subdivision thereof." The Court found this language to be sufficiently clear evidence of intent to abrogate state sovereign immunity. The relevant portion of the opinion was written by Justice O'Connor, and joined by Chief Justice Rehnquist and Justices Stevens, Scalia, Souter, Ginsberg, Breyer and Stevens. *But see* Raygor v. Regents of the University of Minnesota, 534 U.S. 533 (2002) (federal supplemental jurisdiction statute which tolls limitations period for state claims during pendency of federal case not applicable to claim dismissed on the basis of Eleventh Amendment immunity).

[109] Central Virginia Community College v. Katz, 546 U.S. 356, 363 (2006) (abrogation of state sovereign immunity under the Bankruptcy Clause was effectuated by the Constitution, so it need not additionally be done by statute); id. at 383 (Justice Thomas dissenting).

[110] 527 U.S. 706 (1999).

[111] Will v. Michigan Dep't of State Police, 491 U.S. 58 (1989) (holding that states and state officials sued in their official capacity could not be made defendants in § 1983 actions in state courts).

[112] Hilton v. South Carolina Pub. Rys. Comm'n, 502 U.S. 197, 206 (1991) (interest in "symmetry" is outweighed by stare decisis, the FELA action being controlled by Parden v. Terminal Ry.).

**Burden of Proof**

Overview

　　Generally, describes the standard that a party seeking to prove a fact in court must satisfy to have the fact legally established. There are different standards in different circumstances. For

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

example, in criminal cases, the burden of proving the defendant's guilt is on the prosecution, and

they must establish that fact beyond a reasonable doubt.  In civil cases, the plaintiff has the burden

of proving his case by a preponderance of the evidence.  A "preponderance of the evidence" and

"beyond a reasonable doubt" are different standards, requiring different amounts of proof.

The burden of proof is often said to consist of two distinct but related concepts: the burden

of production, and the burden of persuasion.

Standards

Depending on the jurisdiction and type of action, the legal standard to satisfy the burden

of proof in U.S. litigation may include, but is not limited to:

- beyond a reasonable doubt
- clear and convincing evidence
- preponderance of the evidence
- probable cause
- reasonable belief
- reasonable indications
- reasonable suspicion
- some credible evidence
- some evidence
- substantial evidence

The Plaintiff has established the burden of proof beyond a reasonable doubt which is not

needed in a civil lawsuit.  The Plaintiff only has to prove his case by a preponderance of the

evidence.  Which the Plaintiff has done in his Complaint and or brief.

**Overview**

Someone obstructs justice when that person has a specific intent to obstruct or interfere

with a judicial proceeding. For a person to be convicted of obstructing justice, that person must

not only have the specific intent to obstruct the proceeding, but that person must know (1) that a

proceeding was actually pending at the time; and (2) there must be a connection between the

endeavor to obstruct justice and the proceeding, and the person must have knowledge of this

connection.

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

Obstruction of justice is the frustration of governmental purposes by violence, corruption, destruction of evidence, or deceit.1 It is a federal crime. In fact, federal obstruction of justice laws are legion; too many for even passing reference to all of them in a single report.2 This is a brief description of the some of the more prominent.3

**General Obstruction Prohibitions**

The general federal obstruction of justice provisions are six: 18 U.S.C. 1512 (tampering with federal witnesses), 1513 (retaliating against federal witnesses), 1503 (obstruction of pending federal court proceedings), 1505 (obstruction of pending Congressional or federal administrative proceedings), 371 (conspiracy), and contempt.4 In addition to these, there are a host of other statutes that penalize obstruction by violence, corruption, destruction of evidence, or deceit.

Obstruction of Justice

A criminal offense that involves interference, through words or actions, with the proper operations of a court or officers of the court.

The integrity of the judicial system depends on the participants' acting honestly and without fear of reprisals. Threatening a judge, trying to bribe a witness, or encouraging the destruction of evidence are examples of obstruction of justice. Federal and state laws make it a crime to obstruct justice.

One of the key principles of the American judicial system is that the judge who presides over a case must be fair and impartial. In the vast majority of cases, the issue of the judge's fairness and impartiality never comes up. There are instances, however, when one of the parties in a civil case has reason to believe that the judge cannot be fair and impartial. Sometimes the judge recognizes his or her own inability to maintain partial. In those situations, the judge will either recuse himself or the litigant will move to have the judge disqualified from presiding over the case. Let's look at some of the circumstances that may lead to a judge's recusal or disqualification.

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

Bias or prejudice typically means the judge has acted or spoken in a way that prevents him or her from treating the party or attorney in a fair and impartial manner.

**Bias or Prejudice Concerning a Party or Attorney.** If a judge is biased or prejudiced for or against a party or attorney, he cannot be fair and impartial in deciding the case. A party or attorney who believes such bias or prejudice exists must prove it with admissible evidence, and cannot base this belief on mere suspicion.

It's not enough to establish bias or prejudice simply by showing that a judge has ruled against the party or attorney in a prior case. Rather, bias or prejudice typically means the judge has acted or spoken in a way that prevents him or her from treating the party or attorney in a fair and impartial manner.

**Judge's Personal Knowledge of Disputed Facts.** Even a judge who is not serving as the finder of fact (i.e., when the case is to be decided by a jury) cannot be fair and impartial if he or she has personal knowledge of disputed facts, because the judge's evidentiary rulings (in pleadings and motions made by the parties) may be influenced by that knowledge. This is especially true when the facts known by the judge are either not part of the factual record of the case, or conflict with the evidence presented in court.

**Judge's Relationship to a Party or Attorney.** A judge's fairness and impartiality may be compromised when he or she has had a business or professional relationship with a party or attorney. In cases where the judge was a party's business partner or attorney, as well as in cases where the judge was a member of a law firm representing a party, the potential for bias or prejudice is almost always too great to permit the judge to preside over the case.

**Judge's or Judge's Family Member's Economic Interest in the Case.** Sometimes a judge or one of his or her immediate family members will have an economic interest in the subject matter of the case, one that could be significantly impacted by the outcome of the proceedings. For example, the judge's spouse might own a majority interest in a corporate party that is being sued

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

for alleged violation of antitrust laws. In such a circumstance, the judge would have conflicted

loyalties and would have a difficult time remaining fair and impartial in his/her rulings.

**Procedure for Recusal.** When any of the above circumstances are present, the judge may either

raise the issue of recusal him/herself or entertain a motion by one of the parties. A judge who

determines it is necessary to recuse him/herself will advise the parties and attorneys of the grounds

for that determination, and will ask the court administrator to reassign the case to a different judge.

If the matter is brought to the judge's attention through a party's motion seeking disqualification,

in most jurisdictions the judge will initially decide the motion him/herself; if the motion is denied,

the losing party will typically be permitted to have the motion reheard by the court's Chief Judge.

Finally, it's important to note that recusal and disqualification of judges is a sensitive

subject, since it draws into question the fitness of a judge to carry out the fundamental role of his

or her position -- the fair and impartial resolution of judicial proceedings. So, the decision to file a

motion seeing disqualification should be made only after careful consideration.

## Conclusion

The Defendant's counsel does not make themself clear.  What Ohio court made an incorrect

decision?  If the defense team is talking about Judge Christopher Rothgery Common Pleas Court.

Then the Defendant was hands down a decision by the jurors and was well within the color of the

law to make his decision.  Any mistakes the Defendant may of made is of no merit to this lawsuit.

The Plaintiff has no disagreement with that decision under the color of the law.  The Plaintiff is

not basing his lawsuit on that fact.  Nor is he basing his lawsuit on just civil rights violations alone.

The Plaintiff basses his claim on everything herein as put forth before the court as listed:

IMPROPER COURTROOM BEHAVIOR
CONSTITUTIONAL RIGHTS VIOLATION
CIVIL RIGHTS VIOLATION
MALICIOUS PROSECUTION
MISCONDUCT
CONSPIRACY
DEFAMATION

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

CRIMINAL ATTEMPT
CRIMINAL INTENT
ETHICS VIOLATIONS
FRAUD OF COURT
TREASON

The Defendant has not shown any case in point with any merit, and if the Defendant feels

by disrespecting the United States District Court Northern District of Ohio Eastern Division for

their decision to overturn Judge Christopher R. Rothgery unjust decision is grounds and merit is

not enough for the court to grant the Defendant dismissal as they may call it.  The color of the law

does not work like that.  The District Court made it clear that there was insufficient evidence to

support a conviction (refer to Exhibit B).  The Plaintiff's lawsuit is not about the right or wrong of

the courts in the Plaintiff's criminal case.  The Plaintiff's lawsuit is about how he was treated

unlawfully by the Defendant during the case.

The current motion of Dismissal put before the court by the Defendant seems designed to

end-run and so should be rejected for that reason, too.  If this Court makes a ruling on the merits,

as a matter of law, as was the expectation of this discussion cited and the Minute Order, there will

be a decision one way or the other on the merits and no need for dismissal of Plaintiff's Complaint.

If this Court finds that further facts would be necessary to its decision, then those will be provided

under a prior order of this Court.

For the foregoing reasons and all the others discussed in the Plaintiff's Verified Complaint,

Preliminary-Injunction Memorandum, and Preliminary-Injunction Reply, the present Motion to

Dismiss put before the Court should be denied.

Respectfully submitted,


_____

CHARLES BROWN
250 Parmely Avenue
Elyria, Ohio  44035
(440) 310-6819

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and accurate copy of the foregoing was served by regular U.S. Mail, postage prepaid, this _____ day of August, 2021, upon the following:

JUDGE CHRISTOPHER R. ROTHGERY
5301 South Park Drive
Lorain, Ohio  44053
        Defendant

_____
CHARLES BROWN
250 Parmely Avenue
Elyria, Ohio  44035
(440) 310-6819

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO